Again, it should be noted that Justice Chapman is participating, though not available to be here this morning. She will read the briefs and listen to the argument prior to the decision. So, counsel, when you speak, be sure to speak clearly into the microphone so that Justice Chapman will be able to hear your argument. You may proceed, counsel, for the appeal. Good morning, Your Honors. If it pleases the court, counsel, my name is Jay Zanton. I represent the appellant, Judy Lynn Ehrhart, in this matter. And this case arises out of a judgment for dissolution of marriage that was entered in Wayne County. And in that judgment for dissolution of marriage was incorporated a marital settlement agreement that was reached by the parties and signed off by both parties. The agreement itself arises as a result of the discussions by the parties. The parties went to the appellee's attorney's office to have the paperwork put together. And it's really a basic situation you see in a lot of divorce cases, where they divide assets and debts. The agreement was then presented to the court. An entry of appearance had been executed by the appellant, and the agreement was incorporated to a judgment that was entered. Subsequent to that, the appellant filed a motion to vacate pursuant to 2-1401 of the Illinois Civil Practice Act, because more than 30 days had expired since the entry of the judgment. Second, how much time was it? 121 days, specifically. She filed a motion to vacate. The appellee then filed a motion to dismiss. We had a hearing, and the court, the Wayne County Circuit Court, granted the motion to dismiss and actually then dismissed the motion to vacate, and that is why we're here today. Under 2-1401, the appellant is required to prove that it has a meritorious claim, that it acted in due diligence in presenting its claim or her claim to the trial court, and also acted diligently in pursuing the 2-1401 motion. In this case, under 2-1401, one of the things that I think is necessary to understand is that one of the primary purposes of 2-1401 is to bring before the court facts that were unknown at the time that the judgment was entered, and if those facts had been known by the court, that would have prevented the court entering the judgment. In this case, what we are submitting to the court to consider is the fact that when this judgment marital settlement agreement was presented to the court, there was nothing in terms of values of these assets presented, and this becomes quite relevant because this is not a case where you have just nominal value type assets in a lot of divorce cases or insignificant type assets. There were very significant assets in this case. For instance, in the marital settlement agreement, the husband was awarded, the marital residence that had no debt, was awarded 160 acres of a combination of pasture land and farm land that had no debt or very little debt, was awarded his business and all the assets that go with the business, the accounts receivable, inventory, physical assets. He was awarded his entire farming operation and farm equipment, most of which was marital property. He was also awarded his two IRAs subject to a $100,000 payment or at least $100,000 in monies going to my client from his retirement. Contrast that to this. Wife is awarded one vehicle, which in the document itself says there was no debt against it when in fact there was a debt, and that's part of some other proceedings in this case. There was a couple of small bank accounts she was awarded. She had a kind of a hobby doing some embroidery type things. She was awarded those items. She had a pretty nominal retirement account. She was awarded that plus the $100,000. Now, in all frankness, if you looked at just the body of the marital settlement agreement itself, I think you would go, whoa, wait a minute. What's the deal with this agreement? Because when you see these types of assets and one side is receiving a disproportionate share of the assets, it's got to raise some questions, especially when you don't have values attached to it. Even in this case, without the values, just the type of assets that were involved has got to give rise to questions and it's got to give rise to some concerns about how the assets are being divided. Now, I will say this. Admittedly, my client entered into this agreement. She did not have counsel at the time. In the marital settlement agreement, I believe it says something to the effect that she could get an attorney. She didn't do it. Admittedly, all that occurred. But that doesn't change what I believe to be the responsibility of the court and how the law applies in these types of cases. Under Section 502 of the Marriage Act, that particular statute talks about promoting settlement agreements. We all like, as family practitioners of family law, we can work something out super. That's great. So this statute says you should try to do that, try to get things worked out. But one of the things that it also says is that it's got to be conscionable. 502A talks about promoting the settlements. 502B talks about it has to be conscionable. In the divorce decree itself, well, first of all, in the marital settlement agreement, that was signed off by both parties and notarized. The judgment was not. In the judgment, admittedly, it says in the judgment the agreement is not unconscionable. Or maybe it says it is conscionable, same effect. Here's the problem. When presenting this to the court, there's nothing about values of assets. There's nothing about, you know, the specifics about the division other than here's the agreement. The problem that I believe that we face with these types of situations is, is this. If you follow what the trial court did in this case by dismissing the motion to vacate, then any agreement, any agreement that divides property and debt is going to be approved. Any agreement. It doesn't matter how disproportionate the division of the assets are or the debts. Any agreement is going to be approved. That flies in the face of 502 that talks about conscionability, and it also flies in the face of section 503 when it talks about the trial court dividing assets in a case in just proportions. If you also think about it this way, when you present an agreement to a court and children are involved, a court is not required to approve an agreement that it finds not to be in the best interest of the children. How old are the children? Pardon? How old are the children? In this case, there were no children. But I'm just saying from an analysis standpoint, if you look at it, there was an agreement presented to the court, and the court found after presentation, no matter what that agreement says, that the agreement is not in the best interest of the children and doesn't approve it under the law, the court should do that. It's the same way with dividing property and debt. They need to make a determination that what's being done here is conscionable. You can't take a judgment that has boilerplate language that hasn't been reviewed by a party that says conscionable and rely upon that when that's not how it was presented to the court because the court doesn't know what the value of these assets are other than what's on the face of the agreement itself. And that, in this case, again, on the face, there were significant assets, substantial assets, and just by reading it, you could see there was a gross disproportionate division of those assets. The motion to vacate that was filed raises the issue of conscionability. The statute 502 talks about, well, you know, there's got to be evidence that shows that the agreement is not conscionable. Well, that's actually what we're trying to do. We're actually trying to get to the court, look, you didn't hear evidence of this. These were facts that were unknown at the time that this judgment was presented. You weren't aware of the fact of the significance of these assets and the values of these assets. And now we're trying to show you these are the values of these assets. This is why this agreement is unconscionable. The effect of the court's ruling is, the trial court's ruling, is that we can't even do that. We can't present a conscionability argument to the court to say, look, this isn't right. Here's the value of the assets. Here's how they were divided, and make that argument of conscionability. So the effect of that order is to prevent us from even being able to make that argument, to comply with 502, to comply with 503, so that things are done correctly and in the manner in which they should be doing. I can't believe that 502 and 503, as they are written, and the specificity that they are written, allows any agreement to be approved. This doesn't make sense. Now, I understand that the courts are given what they are given. I see an agreement. It's presented. I get that. I've seen that lots of times. But again, most of the time, that deals with assets that are not of great value. Insignificant assets. This is not the case here. This is not the case. Because we're talking about farmland that is estimated to approximately be $600,000 to $800,000. 160 acres of farmland and pastureland combined. You have retirement accounts that have great value, and it's estimated that the retirement account of the husband was approximately $300,000. Well, that $100,000 that the wife got wasn't even half. It wasn't even half of that. That doesn't even get to the farming operation and the farm equipment. That doesn't even get to the husband's business and the value of that business and all the assets related to that business. That doesn't even get to that stuff. And even on the face of the agreement itself, there's very little debt that attaches to any of this stuff. So you have a situation here where, quite frankly, on its face I believe it to be unconscionable that we're not to that point with the court because we were prevented from being able to even argue that. And that's all we're wanting to be able to do. We're wanting to be able to go to a court and say, look, take a look at the conscionability of this agreement. Really look at it with evidence. Maybe the court at the end of it says, you know, we're going to find it conscionable. If that's what the court does, that's what the court does. That's a different issue for a different time. But at least I believe that the appellant in this case should be afforded the right to at least be able to present that. This is a de novo review on motion to dismiss. I think if the court takes a look at it, I would hope the court takes a look at it and finds that, yeah, this is something that needs to be remanded to the trial court for further proceedings. We're asking the court to do that, to consider that. At times during my argument I will point one thing out. It almost sounds like I'm arguing for the appellate. Because the way this was presented and done for the trial court in terms of the agreement and the preparation of documents, it was really one of the course-type stuff that we do all the time as family practitioners and family law. But the problem is you still have a conscionability argument. And I do believe that the appellant should be given that right to at least make that argument and proceed from there. Thank you, counsel. You'll have an opportunity for a rebuttal. Counsel for the appellate. Good morning, Your Honors. My name is Gary Lone. I represent Gary Earhart. When we look at this case and the requirements of the 2-1401 petition, one of the requirements, of course, is that the litigant exercise due diligence in the trial court to present whatever claim they have and what the issue is. In this particular situation, Judy Earhart was given a letter by Mr. Klein, the attorney who represented Gary Earhart, advising her that she should seek counsel, but he did not represent her. There are at least two references in the Merit Settlement Agreement where this is reiterated to her, and she, as one of the statements in the Merit Settlement Agreement, acknowledges full knowledge of the financial picture of the parties. And Mr. Klein, in his testimony at the hearing to vacate the 2-1401 petition, gave detailed testimony of his meeting with these two folks that Judy Earhart participated in the discussion and was knowledgeable of the assets. So she chose to not get counsel, and she signed the settlement agreement, didn't say anything. So there is absolutely, first of all, no due diligence on her part to raise any issue in the trial court. So when we look at the requirements of the 2-1401 petition, it's over. She loses that argument. So then what we have is a back-up argument, essentially, saying, look, and although Judy Earhart doesn't say this, basically what, when we look between the lines of what's going on here, she's really saying, look, I didn't do anything in the trial court to investigate if I had any questions of the assets or the values, which we contend she did not, and we believe that that's confirmed by Mr. Klein's testimony. But in any event, even if she did, she did nothing to try to obtain information, investigate the situation. She had every opportunity to do that, chose not to do that. And so now she's saying, even though I didn't do anything, I guess she's saying the trial court should have been my advocate, should have conducted its own investigation to determine the valuations of assets. So she's saying that that didn't happen, so now I want to fall back on the idea of unconscionability and stand on the proposition that this agreement is so unfair that it should be vacated. Well, that is a huge opening of the Pandora's box. What goes into the file process of someone when they enter into an agreement? In this particular case, we know that she remarried shortly after the divorce, so was she in a hurry to remarry? She didn't want the divorce to drag on. Did her future husband have enough assets that she wasn't worried while she got out of the divorce? Who knows? Who knows what goes into someone's thought process when they are trying to resolve an agreement of some type, whatever it is, whatever it is. So she's basically saying now that, and by the way, she received $100,000 from Mr. Earhart's, one of his retirement plans, and a qualified domestic relations order was entered, prepared and entered, and the money was taken out of his account. So she's received a substantial benefit from the divorce in any event. But the whole, what it boils down to in large part is that it's a real slippery slope to throw away the agreement of parties who have knowledge of their own assets because, again, we don't know what their thought process is and why they might have agreed to take, you know, the heat pen instead of the tabled paper. The fact that she did nothing in the trial court, we believe, defeats her case entirely. There was strictly no, if there was any question in her mind about any valuations, about any assets, then she could have followed up on that. She didn't do it. So there's no due diligence. The 1401 is defeated. The unconscionability argument is defeated because, again, that is such a subjective thing that it's impossible in a situation like this. The net effect of that is that any agreement ever presented to a trial court would be approved is not true because you have issues that arise of fraud, concealing of assets. You have issues arising of duress, threats, coercion, things of this nature. There's none of that. There's none of that in this situation. So we can't even go to where Judy Earhart wants to go to. So for all those reasons, we submit that the trial court was correct in its analysis of this situation and the order that was entered that vacated the 2-1401 petition. Thank you. Thank you, Counsel. Mr. Butler? When I state that any agreement presented under a property division type settlement would be approved, no matter how the answers were divided, I'm talking about the type of facts and circumstances that we have here. And that's why I discussed what I think is a contradiction in terms of the unconscionability argument under 502 and the just proportion argument under 503. As far as the factors or the considerations under 2-1401, our argument is that the appellant does have a meritorious claim under 502 and 503. She did act diligently in getting this once she obtained information and was able to get counsel to file this. It's not a thing that went on for months and months and months and months. She was on it. And as far as the due diligence issue concerning presenting the claim to the trial court, one of the things that is interesting about this particular prong of 2-1401 is common law seems to suggest that this prong be very, very flexible. I cited some authority in my brief concerning this particular issue. Sometimes you have misleading testimony or a lack of disclosure of something. Here what we have is that we have clearly in the agreement itself a disproportionate value of assets on its face. So you have the issue of conscionability and how that agreement was arrived at, what the values are. And so I would submit to this court that due diligence there was met by the appellant as well. I think in the end when your honors consider this case, the question is going to be is how are family practitioners supposed to prepare agreements for trial courts? When the letter came, how long was the letter after the agreement from the attorney saying that I'm not your attorney? If you want to hire one, you can. Or whatever it said, I don't recall the letter. I think that letter, I think the evidence of that letter in all honesty might have been sent out either, it was either just before the agreement was entered into or immediately after. It might have been before she signed it. It might have been before she signed it. I'd have to go back and look at the criminal record. That is in the record, I'm sure. It is, your honor. I think it's dated. I think the letter is dated. So it really comes down to how we are to prepare marital settlement agreements and what we're supposed to put in there, especially if you have significant assets and how to present it to the court to make certain that an appropriate finding of constability is made and that the court is aware of things in terms of the division of property and the division of assets. And the only way the court is going to know that is for agreements to be more specific when you're talking about substantial assets and significant assets. Again, this is not a case where we're just dealing with just a few items of nominal value. We're dealing with some items that have some significant value that were clearly disproportionately awarded to the husband. So, again, we'd ask the court to consider an argument, and we would ask that it be reversed and remanded to the trial court for further proceedings. I think the question is, when is there a finality to the agreement? That's what we're looking for, isn't it? Finality. Ultimately, the finality. Of an agreement. When is an agreement an agreement that's final? I think an agreement is an agreement once the court has, or once the court signs it. The court has to make certain findings. As I mentioned, the court may, I call it a boilerplate finding of constability without, to be honest with you, the evidence to support it. Because there's nothing in the agreement other than what's on the face of the document. So the finality, I mean, once the court, I think, makes those findings, I think that's where it makes the final. Thank you. Thank you, counsel. The court will take this matter under advisement and issue a decision.